Argued and submitted May 17, 2018, affirmed July 8, petition for review denied December 10, 2020 (367 Or 290)

LNV CORPORATION,
a Nevada corporation,
*Plaintiff-Respondent,*

*v.*

Robynne A. FAULEY,
an individual,
*Defendant-Appellant,*

*and*

U. S. BANK NATIONAL ASSOCATION,
*Defendant.*

Clackamas County Circuit Court
16CV24589; A164792

471 P3d 111

In this challenge to the trial court's order under ORS 18.948(2) confirming a sheriff's execution sale of real property. Fauley asserts that the trial court erred in concluding that she had not established that it was probable that she suffered damage, because she was deprived of the right of possession upon the sale of the property. *Held*: The remedy available to Fauley under ORS 18.948(2) was a resale of the property, and, because the probable damage alleged by Fauley would not have been remedied by a resale, the trial court did not err in concluding that it was not probable that she suffered damage.

Affirmed.

Eve L. Miller, Judge.

J. Ryan Adams argued the cause and filed the briefs for appellant. Also on the opening brief was Tyler Smith and Associates, PC.

Erick J. Haynie argued the cause for respondent. Also on the brief was Perkins Coie LLP.

Scott Ciecko and Stephen L. Madkour filed the brief *amicus curiae* for Clackamas County.

Before Armstrong, Presiding Judge, and Tookey, Judge, and Shorr, Judge.

ARMSTRONG, P. J.

Affirmed.

Shorr, J., dissenting.

**ARMSTRONG, P. J.**

The trial court entered an order under ORS 18.948(2) confirming a sheriff's execution sale of real property. To successfully challenge the lawfulness of an execution sale of real property under ORS 18.948(2), an objector to the sale must establish that (1) the sale was "not conducted in a manner that substantially conformed with the manner required by law" and (2) "as a result it was probable that the [objector] suffered damage." Fauley, who objected to the execution sale that is the subject of this appeal, challenges the sale-confirmation order, raising two assignments of error. In her first assignment, Fauley asserts that the trial court erred in failing to conclude that the sale was not lawful: Under ORS 18.872, the sheriff's office must return a writ of execution to the court administrator within 60 days after the sheriff receives the writ (unless the judgment creditor obtains an extension, or the court extends the period for good cause), and Fauley contends that the sheriff returned the writ of execution concerning her real property well after the 60-day deadline. In her second assignment, Fauley asserts that the court erred in concluding that she had not established that it was probable that she suffered damage, because she was deprived of the right of possession upon the sale of the property and that the sheriff's delay in selling the property resulted in about an increase of $20,000 in accrued post-judgment interest that had an adverse effect on her right to redeem the property.

LNV Corporation (LNV) responds that we lack jurisdiction over this case because an order made under ORS 18.948 "conclusively establishes" that an execution sale of real property was conducted in the manner required by the law. That is, according to LNV, the trial court has the final say on the lawfulness of an execution sale of real property when it confirms the sale under ORS 18.948(2), and an order under that provision is therefore not appealable. In the alternative, if an order made under ORS 18.948 is appealable, LNV argues that the trial court did not err in concluding that Fauley failed to prove that it was probable that she suffered damage, because (1) Fauley failed to preserve her argument that post-judgment interest accrual prevented the exercise of her right of redemption; (2) Fauley has not,

in fact, been dispossessed of the property because, at the time of the hearing objecting to the execution sale, Fauley continued to possess the home and the sheriff had not taken any steps to remove her; and (3) the sheriff's delay of the execution sale did not cause damage to Fauley because the delay extended any possessory right held by Fauley.[1]

Our review concerns the construction and application of ORS 18.948; we review the trial court's determinations for legal error. *See South Valley Bank & Trust v. Colorado Dutch, LLC*, 291 Or App 175, 178, 420 P3d 653 (2018) (reviewing a trial court's conclusions and application of a statute for legal error, applying the analytical approach set out in *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009)); *cf. Premier West Bank v. GSA Wholesale, LLC*, 196 Or App 640, 642, 103 P3d 640 (2004) (reviewing for legal error trial court order for sale of property under statute authorizing judgment creditor to execute against real property). As to historical findings of fact, the facts necessary to resolve those legal issues are undisputed. As we explain below, we conclude that (1) the trial court's confirmation order is appealable and (2) the trial court did not err in confirming the execution sale because Fauley failed to establish that it was probable that she suffered damage. We need not reach the issue whether the sale was conducted in a manner that did not substantially conform with law. We therefore affirm the order confirming the sale of the real property.

## BACKGROUND

LNV ultimately held the note obligating Fauley to make monthly payments on a loan that she had received. The note was secured by a deed of trust on Fauley's home. Fauley defaulted on the loan, and LNV sought judicial foreclosure

---

[1] LNV and Clackamas County, in an *amicus* brief, assert that, in any event, the sale was made in a manner that substantially conformed with the 60-day return-of-writ requirement under ORS 18.872 because the sheriff's office determined that the writ was not "received" on or around the time that the office came into possession of the writ but on a much later date, which was after the office examined the writ for legal sufficiency and date-stamped it as "Received." We do not reach whether the manner in which the sheriff's office handled the writ, *viz.*, by treating the writ as received by the office only after the office examined it for legal sufficiency, complies with ORS 18.872.

of the trust deed in federal court. *LNV Corp. v. Fauley*, 178 F Supp 3d 1043 (D Or 2016), *aff'd*, 698 Fed Appx 479 (9th Cir 2017). LNV obtained summary judgment on its entitlement to judicial foreclosure, and the district court entered a judgment of foreclosure in favor of LNV.

In August 2016, LNV filed the foreclosure judgment as a foreign judgment in the Clackamas County Circuit Court. On September 18, 2016, a writ of execution for the foreclosure judgment was issued by the court, "making due return within 60 days after [the sheriff] receive[d] the writ." On February 2, 2017, the sheriff's office date-stamped the writ as "received." The sheriff conducted the foreclosure sale, and LNV purchased the property on March 14, 2017. On March 16, 2017, the sheriff returned the writ, certifying in the return that it had received the writ on February 2, 2017.

Fauley, as allowed by ORS 18.948, filed an objection to the sale. Fauley argued that, contrary to the sheriff's assertion that the writ was "received" on February 2, 2017, the writ actually was received by the sheriff sometime between the date that the writ was issued—September 13, 2016—and the date that LNV recorded with the county recorder a copy of the writ, as required by ORS 18.870—September 19, 2016. Because the writ was returned on March 16, 2017, Fauley argued, the writ was returned well after the 60 days required by ORS 18.872(1). According to Fauley, the sale of her property was made without lawful authority and was therefore void.

The trial court held a hearing on the objection. In addition to a representative from the sheriff's office testifying about the reasons that the office had executed the sale when it did, Fauley also testified. She explained that she had called the sheriff's office after she received notice of the writ of execution to learn when the foreclosure sale would occur and when she would have to move. Fauley testified that she was told that it would be about a year's time, and that she relied on that representation to plan ahead. She also said that she had some family members who were present at the foreclosure sale and that she wanted to redeem—buy back from the bank—the property and stay in the house.

At the conclusion of the hearing, Fauley argued that she would be damaged by "being dispossessed unlawfully * * * and prematurely," that she had a redemption right, and that she relied on the timeline given by the sheriff's office. LNV responded that, even assuming that the sale was unlawful, Fauley had failed to prove that it was probable that she suffered damage from the timing of the sale. That is, LNV contended that the delay of the sale benefitted Fauley because she was able to stay in her home longer than she would have had the sale been made within the period of time that Fauley asserted was required. The trial court ruled that it was confirming the sale on the basis that it was not probable that Fauley had suffered damage as a result of the sheriff's conduct of the sale, but it did not decide whether the sale had been conducted in a manner that did not substantially conform with law, *viz.*, whether the sheriff had complied with the deadline requirement for return of a writ under ORS 18.872 and whether it was permissible for the sheriff's office to delay acknowledging its receipt of a writ of execution.

LNV thereafter posted a notice to quit on the front door of the property, Fauley remained on the property after the sale, and LNV then filed a motion with the trial court for a writ of assistance for the purpose of placing it in possession of the property. Fauley appealed the court's confirmation order, and after a hearing, the trial court stayed the writ of assistance on the condition that Fauley file a *supersedeas* undertaking, pending resolution of this appeal.

## JURISDICTION

The procedure for confirmation of an execution sale of real property is set out in ORS 18.948, which provides, in relevant part:

"(1)   A sale of real property in an execution sale is conclusively established to have been conducted in the manner required by ORS 18.860 to 18.993 unless the judgment debtor or another person adversely affected by the sale files an objection to the sale no later than 10 days after the filing of the sheriff's return under ORS 18.872.

"(2)   If an objection to a sale is filed, the court shall schedule a hearing on the objection. The court shall grant

an order confirming the sale unless the person objecting to the sale establishes that the sale was not conducted in a manner that substantially conformed with the manner required by law, and that as a result it was probable that the person suffered damage. An order confirming a sale under this subsection *conclusively establishes that the sale was conducted in the manner required by ORS 18.860 to 18.993.* If the court sustains the objection, the court shall direct that the property be resold. Notwithstanding any other provision of ORS 18.860 to 18.993, the court may establish timelines for the conduct of the second sale and the return by the sheriff upon completion of the second sale."

(Emphasis added.)

In LNV's view, because a trial court's confirmation of the sale "conclusively establishes" that the sale conformed with lawful requirements, ORS 18.948 "expressly provides" that the order is not appealable. That is, the words "conclusively establishes" can have no other meaning than as a bar to "all further legal challenges, including an appeal." Further, according to LNV, the purpose of the provisions for conducting execution sales, ORS 18.901 - 18.985, is to provide "swift resolution" of such sales and the right to appeal the court's order confirming a sale would undermine that purpose. Fauley's continued possession of the property, LNV asserts, is antithetical to its right of possession obtained through its foreclosure judgment and the order confirming the sale.

For the reasons that follow, we reject LNV's argument that the phrase "conclusively establishes that the sale was conducted in the manner required by ORS 18.860 to 18.993" means that a court's confirmation of the sale under ORS 18.948(2) is not appealable, much less that it unambiguously says that to be so. That is because the term "conclusively establishes" can mean that a confirmation of a sale establishes that the sale was conducted in a manner that conformed with the statutory requirements for execution sales with respect to legal proceedings *other* than the sale-confirmation proceeding. For example, an order made under ORS 18.948 would control a quiet-title action seeking to challenge the validity of a title on the basis that it was obtained

in a sheriff's execution sale that did not conform with the requirements for execution sales or writs of execution.

Moreover, in 2005, when the legislature substantially revised the laws concerning judicial sales made under writs of execution, which included ORS 18.948, it did so to clarify and update them. As part of that revision, ORS 18.948 replaced *former* ORS 18.548 (2003), which was the statute concerning proceedings after a sale of real property by writ of execution.[2] That statute provided that an order confirming an execution sale is a "conclusive determination of the regularity of the proceedings concerning such a sale, as to all persons, *in any other action, suit or proceeding.*" *Former* ORS 18.548(4) (2003) (emphasis added). Although the words "conclusive determination" are not identical to "conclusively establishes," the two versions are similar enough to suggest that "conclusively establishes" refers to the effect of a confirmation order under ORS 18.948(2) as to collateral proceedings.

Although there is no mention of ORS 18.948(2) in the legislative history, the Oregon Law Commission (OLC) work group that drafted the revisions did say that ORS 18.948(1) was meant to address an ambiguity in the prior version of the statute that permitted an inference that it was necessary to obtain a court order to confirm a judicial sale unless an objection was filed. Judicial Sales Sub-Work Group, Oregon Law Commission, Bill Summary, Apr 11, 2005.[3] That is, the former version of the law, *former* ORS

---

[2] The sole mention in the legislative history of the change to confirmation of sales made under writ of execution was provided in the work group's summary:

"[Section 34] replaces ORS 18.548. Section 34 clarifies an ambiguity in current law, by providing that the sale of real property is 'conclusively established' unless an appropriate person files an objection within 10 days after the sheriff's return is filed. Current law provides only that the plaintiff seeking a writ of execution is entitled, on motion, to have a court order confirming the sale after 10 days. ([*Former*] ORS 18.548(1) [2003].) The conclusive presumption eliminates the inference that it is necessary to obtain a court order to confirm the sale unless an objection is filed."

[3] That prior version, *former* ORS 18.548(1) (2003), provided that the

"plaintiff in the writ of execution is entitled, on motion therefor, to have an order confirming that sale at any time after the expiration of 10 days from the date of filing the return of sale, unless the judgment debtor *** files with the court administrator within 10 days after the return of the execution, the objections of the judgment debtor *** thereto."

18.548(1) (2003), provided only that the plaintiff seeking a writ of execution is entitled *by motion* to have a court order confirming the sale after 10 days had elapsed. *Id.* That ambiguity was remedied by ORS 18.948(1), which provides that a "sale of real property in an execution sale is *conclusively established to have been conducted in the manner required by ORS 18.860 to 18.993* unless the judgment debtor or another person adversely affected by the sale files an objection to the sale no later than 10 days after the filing of the sheriff's return under ORS 18.872." (Emphasis added.) The revision was intended to provide a "conclusive presumption" that the sale was lawful and eliminated the inference that a court order was necessary to confirm the sale unless an objection is filed. Judicial Sales Sub-Work Group, Oregon Law Commission, Bill Summary, Apr 11, 2005.

With that said, it is reasonable to assume that, in drafting ORS 18.948 and including the words "conclusively establish" in both sections (1) and (2), the OLC work group intended that those sections would work together. Because "conclusively established" in section (1) has nothing to do with appealability, to conclude that "conclusively establishes" is a term that operates to eliminate the appealability of a confirmation order would run counter to the presumption that the same terms in related statutory provisions are consistent in their meaning. *Northwest Natural Gas Co. v. City of Gresham*, 359 Or 309, 323, 374 P3d 829 (2016) ("It is generally presumed that when the legislature uses the same term through an enactment, it intended that term to have the same meaning.").

It also is reasonable to assume that, if the intention were to make confirmation orders under ORS 18.948(2) nonappealable, the OLC work group would have made that clear to the legislature. The OLC work group, in its testimony and its summary of the revisions provided to the legislative committee, highlighted the significant changes included in the draft of the bill. At the time of the revisions, an order confirming an execution sale of real property was appealable under our case law. *Director of Veterans' Affairs v. Petersen*, 94 Or App 314, 317 n 3, 766 P2d 386 (1988), *aff'd*, 308 Or 632, 784 P2d 1076 (1989). To make orders confirming an execution sale nonappealable would have been a significant

change in the law. Yet, there was no mention of a confirmation order's appealability, or nonappealability, by either representatives of the work group or members of the committee. To be sure, we are cautious of "[i]nferring legislative intent on the basis of a lack of comment in the legislative history." *Wyers v. American Medical Response Northwest, Inc.*, 360 Or 211, 226-27, 377 P3d 570 (2016). Nevertheless, it is a safe assumption that the OLC work group was forthcoming in its explanation to the legislature of the revisions that it was proposing and that the work group would have alerted the committee of a change as significant as eliminating the appealability of a confirmation order. *See State v. Civil*, 283 Or App 395, 414 n 4, 388 P3d 1185 (2017) (noting that the assessment of legislative silence is case specific and that, "given the tone and totality" of the Criminal Law Revision Commission's discussion, "an objectively reasonable 'listener' would ascribe significance to the silence").

Consequently, for those reasons, we reject LNV's argument that the confirmation order under ORS 18.948(2) is not appealable and turn to the merits of Fauley's assignment of error challenging the trial court's ruling.

## PROBABLE DAMAGE

As noted, an objector to an execution sale of real property must establish two things: (1) "that the sale was not conducted in a manner that substantially conformed with the manner required by law," and (2) "that as a result it was probable that the person suffered damage." ORS 18.948(2). Because we conclude that the trial court did not err by confirming the sale on the basis that Fauley had not established the second requirement to reject the sale, we need not address the first requirement and assume, without deciding, that the sale was not conducted in a substantially conforming manner.

To begin, Fauley did not preserve her argument that it was probable that she had suffered damage because the accrual of post-judgment interest caused by the delay had an adverse effect on her right to redeem the property. On appeal, she argues that, on July 16, 2016, the federal district court entered a judgment in favor of LNV for $473,794.97, and that, on March 14, 2017, the sheriff sold the property

to LNV for $493,182.61. Therefore, she posits, $20,000 was added to the redemption price because of the sheriff's alleged tardiness in selling the property. Any argument that Fauley made with respect to redemption was limited to saying that "the Court already knows about the redemption right." Fauley did not make any argument to the trial court, at the hearing or in her written arguments to the trial court, that the added accrual of interest impeded her redemption right. An issue that is not raised below will not be considered on appeal. ORAP 5.45(4).

Fauley did preserve her argument that she was damaged because the sale unlawfully and prematurely dispossessed her of her legal right to her home. Fauley asserted below that, because her right to possession of the property terminates only when a sheriff's sale is made, if the sheriff's sale is unlawful, then dispossessing her of the property is unlawful.

On appeal, LNV responds that (1) Fauley has never been dispossessed of the property—she remained in possession at the time of briefing; (2) because the foreclosure judgment foreclosed Fauley's right to possess the property, she was dispossessed of any "bona fide legal interest in the property" regardless of any noncompliance in executing the writ of execution; and (3) any improper delay by the sheriff in the sale of the property resulted in an extension—not a disruption—of any asserted right to possession and that a resale of the property if the sale were not confirmed would have created only more delay.

Proceeding with the assumption that Fauley was dispossessed of a legal right to possess her home, we focus on whether the alleged noncompliance with ORS 18.872 caused Fauley harm. Fauley asserts that the sheriff's noncompliance with ORS 18.872 made the sale unlawful, and that she was damaged because she lost the right of possession to the property by means of that unlawful sale. There is nothing in the record indicating that the alleged delay of the execution sale affected Fauley's ability to purchase the property. LNV, on the other hand, argues that Fauley needed to show more than that a sale occurred in an unlawful manner. "Probable damage" must have resulted from a particular act

or omission, LNV asserts, and Fauley was required to prove that she had been harmed by the delay itself, not that the sale was conducted unlawfully because the sheriff did not comply with the return-of-writ time limitation. The answer to those competing arguments is not readily found in the text of ORS 18.948(2), which provides that an objector must establish that "the sale was not conducted in a manner that substantially conformed with the manner required by law, and that *as a result* it was probable that the person suffered damage." (Emphasis added.) The text does not plainly indicate whether an objector must establish that it was probable that he or she suffered damage "as a result" of noncompliance with a particular statute relating to writs and execution sales or "as a result" of an unlawful sale.

More helpful is the remedy provided by ORS 18.948(2): "If the court sustains the objection, the court shall direct that the property be resold." We have said that a remedy is a legal means to recover a right or obtain redress for a particular wrong. *See Hickey v. Hickey*, 269 Or App 258, 267-68, 344 P3d 512, *rev den*, 357 Or 415 (2015) (concerning a trial court's discretion to order a remedy under ORS 60.952, a remedy is "not without limit" and must correspond to the particular wrong or legally recognized right provided by law). That principle naturally applies here. A resale of the property provides the sheriff an opportunity to conduct the sale in a manner that will redress any deficiency of the original execution sale that may have occurred. For example, had the sheriff failed to provide the notice in a manner that substantially conformed with the publication requirements set out in ORS 18.924 (notice of an execution sale must be published by website and in a newspaper), and a prospective bidder was deprived of an opportunity to bid on the execution sale because of the failure, a resale of the property would remedy that deficiency by providing the prospective bidder an opportunity to bid at the execution sale. In this case, directing the sheriff to resell the property would not have redressed the sheriff's alleged failure to timely sell the property. The time needed to conduct the resale would have provided additional time for Fauley to legally remain in possession of the property, but that additional time would not have remedied any failure of the sheriff to comply with

the 60-day return-of-writ time requirement. That is, the sole remedy the court could have provided had it sustained Fauley's objection was further delay in the sale by directing the sheriff to resell the property. That cannot be what the legislature intended by providing a process to object to an execution sale. Fauley failed to establish that it was probable that she suffered damage in a manner contemplated by ORS 18.948.

      Affirmed.

      **SHORR, J.,** dissenting.

      I respectfully dissent from the majority opinion because, unlike the majority, I would conclude that a person has suffered probable "damage" when a sheriff's execution sale that does not substantially conform to law dispossesses the person of property that she otherwise has a legal right to possess.[1]

      As the majority correctly observes, an objector to an execution sale of real property must establish two elements: (1) "that the sale was not conducted in a manner that substantially conformed with the manner required by law" and (2) "that as a result it was probable that the person suffered damage."[2] Here, defendant Fauley objected to the execution sale because, she contended, the sheriff did not return the writ of execution within 60 days after receiving it such that the resulting sale did not substantially conform to law. *See* ORS 18.872(1) (stating that "[t]he sheriff shall make a return on the writ of execution to the court administrator

---

[1] I agree with the majority's conclusion that the trial court's order confirming the sheriff's sale is appealable.

[2] ORS 18.948(2) provides:

    "If an objection to a sale is filed, the court shall schedule a hearing on the objection. The court shall grant an order confirming the sale unless the person objecting to the sale establishes that the sale was not conducted in a manner that substantially conformed with the manner required by law, and that as a result it was probable that the person suffered damage. An order confirming a sale under this subsection conclusively establishes that the sale was conducted in the manner required by ORS 18.860 to 18.993. If the court sustains the objection, the court shall direct that the property be resold. Notwithstanding any other provision of ORS 18.860 to 18.993, the court may establish timelines for the conduct of the second sale and the return by the sheriff upon completion of the second sale."

within 60 days after the sheriff receives the writ"). She further contended that she was damaged when she was dispossessed of her property pursuant to an unlawful sale. The trial court denied Fauley's objection after reaching only the second element, lack of probable damage, and the majority affirms that decision.

The majority concludes that Fauley did not suffer probable damage as a result of being dispossessed of her property following a sale process that, the majority assumes, did not substantially conform to law. Like the majority, I assume that the sale did not substantially conform to law, but I disagree with the majority's conclusion that the improper sale did not cause Fauley to suffer probable damage. "Damage" generally means, in this context, "injury or harm to [a] person." *Webster's Third New Int'l Dictionary* 571 (unabridged ed 2002). Fauley was entitled to possession of the property and the entitlement was transferred to LNV only upon its purchase of the property. If the sale that effected that transfer was not conducted in a manner that substantially conformed to the requirements for an execution sale, Fauley established that, *as a result of the nonconforming sale*, it was probable that she suffered injury or harm—that is, her loss of entitlement to lawful possession through an unlawful sales process.

The majority supports its conclusion by pointing to the remedy that is provided in ORS 18.948(2), which states that, "[i]f the court sustains the objection, the court shall direct that the property be resold." The majority further relies on the legal principle that "a remedy is a legal means to recover a right or obtain redress for a particular wrong," citing *Hickey v. Hickey*, 269 Or App 258, 267-68, 344 P3d 512, *rev den*, 357 Or 415 (2015). 305 Or App at 262. I agree with the majority's reliance on those legal principles, but their application leads me to the opposite conclusion than that reached by the majority. If Fauley had a right to possess her property until a lawful execution sale, as I believe she did and as I understand the majority to accept, the sale of her property by an unlawful sale damaged her. Further, the remedy of nullifying that improper sale (and requiring a new one) would redress the particular wrong at issue;

namely, Fauley would not have been dispossessed by an unlawful sale and a new proper process would commence. To restate it simply, but for the unlawful sale, Fauley would have legally remained on her property, and the damage of the unlawful sale would be remedied by restoring her to that position.

The majority contends that any additional time for Fauley to remain on her property "would not have remedied any failure of the sheriff to comply with the 60-day return-of-writ time requirement." 305 Or App at 262-63. With respect, that contention answers the wrong question, as the issue is not whether Fauley remaining on her property would remedy a presumably unlawful sale. The issue is whether Fauley's objection challenging the presumably unlawful sale would have remedied any failure by the sheriff in proceeding with a sale that did not substantially conform to the law. Fauley's objection would have remedied such failure by forcing the sheriff to conduct the sale again in a manner that did substantially conform to the law. For that reason, I respectfully disagree with the majority's opinion.

Assuming that the "sale was not conducted in a manner that substantially conformed with the manner required by law," as required by ORS 18.948(2), it was sufficient for Fauley to establish that it was probable that she suffered damage because she was entitled to a possessory interest in the property until it was transferred to LNV (or another buyer) by way of a proper execution sale. The trial court erred in concluding otherwise.

For reasons that are unnecessary to understanding this dissent and are rendered moot by the majority's contrary conclusion on probable damage, I would remand this case to the trial court to make findings of fact regarding when the sheriff received the writ of execution, that is, when the writ came into the possession of the sheriff's office. There was evidence that the sheriff came into possession of the writ several months before the sheriff's office stamped the writ as "received." However, the trial court did not reach those factual issues. It also did not decide the corresponding legal question whether any execution sale substantially conformed with the manner required by law. Because I would

reverse and remand this case to the trial court, I dissent from the majority's opinion that affirms the trial court's decision.

I respectfully dissent.